**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

| | |
|---|---|
| ASHLEY GROVE, | ) |
| | ) |
|    Plaintiff, | ) |
| | )  Case No. 3:20-cv-5656 |
|    v. | ) |
| | ) |
| NICEVILLE REFRIGERATION & AIR | ) |
| CONDITIONING, INC. | ) |
| | ) |
| and | ) |
| | ) |
| JASON MICHAEL RING. | ) |
| | ) |
|    Defendants. | ) |

**<u>COMPLAINT & DEMAND FOR TRIAL BY JURY</u>**

Comes now Ashley Grove ("Ms. Grove" or the "Plaintiff"), by and through undersigned counsel, and as and for her complaint (the "Complaint") against Niceville Refrigeration & Air Conditioning, Inc. ("NRAC") and Jason Michael Ring ("Mr. Ring") (NRAC and Mr. Ring being collectively known as the "Defendants" and each sometimes as a "Defendant") states as follows:

**Introduction**

1.    This matter concerns Ms. Grove's employer pressuring her into having an abortion, followed by a course of strategic and menacing retaliation against Ms. Grove for having the temerity to complain of this illegal treatment.

1

2. Mr. Ring, a former senior manager at NRAC, commenced sexually harassing Ms. Grove as soon as her employment began, with this course of action culminating in Mr. Ring's mounting of a pressure campaign to induce Ms. Grove to have an abortion, which he went so far as to help arrange.

3. After Ms. Grove acquiesced to this disturbing pressure and suffered related acts of prurient disparagement, she complained to NRAC's human resources department which launched an investigation culminating in Mr. Ring's resignation.

4. Following Mr. Ring's resignation, NRAC's remaining personnel elected to retaliate against Ms. Grove for speaking up against the apparently-beloved former employee, changing her hours, eliminating her access to workplace resources requisite to carry out her job, criticizing her seemingly ever action, and generally ensuring the creation of an environment so hostile as to invite her constructive termination.

5. Ms. Grove now brings this action to seek recourse for the personally and morally degrading conduct of the Defendants, as well as for their retaliatory campaign aimed at making her suffer for daring to challenge such egregious illegality.

**Parties**

6. Ms. Grove is a natural person who is a citizen of the State of Florida by virtue of her ongoing domicile therein.

7.    NRAC is a Florida corporation with its principal place of business in Okaloosa County, Florida.

8.    Mr. Ring is a natural person who, upon information and belief, is a citizen of the State of Florida by virtue of his ongoing domicile therein, though Ms. Grove does not presently know if Mr. Ring abandoned this citizenship in favor of that of another state following the events at issue *sub judice*.

### Jurisdiction and Venue

9.    This Honorable Court enjoys jurisdiction over the instant controversy, pursuant to the allowances of Section 1331 of Title 28 of the United States Code, as Ms. Grove alleges herein, *inter alia*, a violation of the Title VII of the Civil Rights Act of 1964 as codified at Section 2000e, *et seq.* of Title 42 of the United States Code ("Title VII").

10.    Venue is properly laid in this Honorable Court, pursuant to the allowances of Section 1391 of Title 28 of the United States Code, as a substantial portion of the discrimination complained of herein occurred within Okaloosa County, being a county enumerated in Section 89(a) of Title 28 of the United States Code.

11.    Pursuant to Local Rule 3.1, suit is properly brought in the Pensacola Division of this Honorable Court as Okaloosa County is subsumed within that division.

## General Allegations

12.     Ms. Grove was hired by NRAC on or about July 29, 2019, at which time she was pregnant and openly disclosed the same to NRAC.

13.     As an employee of NRAC, Ms. Grove was initially supervised by Mr. Ring, the then-senior vice president of NRAC.

14.     Almost immediately following Ms. Grove's commencement of work, Mr. Ring began making sexually suggestive comments to Ms. Grove, indicating she was hired because of a need for "good looking women" in the office.

15.     Mr. Ring also began spending an obsessive amount of time in Ms. Grove's office, where he would openly discuss personal matters and repeatedly pry of Ms. Grove to do the same with him.

16.     Shortly thereafter, Mr. Ring began to pressure Ms. Grove into having an abortion, going so far as to research local abortion clinics.

17.     Mr. Ring shared with Ms. Grove that having an abortion would aid her career advancement at NRAC and, simultaneously, implied that failing to do so would materially hamper and impair any prospects of her career advancement at NRAC.

18.     At the urging of Mr. Ring, and against her own personal wishes and inclinations, Ms. Grove terminated her pregnancy at the location suggested by Mr. Ring, using time he specifically gave her off of work to undertake the procedure.

19. Both before and after having an abortion, Ms. Grove suffered direct sexual harassment – and unwanted touching – from Mr. Ring.

20. Specifically, and without limitation, Mr. Ring would tell Ms. Grove that she was a distraction to him at work, would loiter excessively in her office, and took to sending her a series of greeting cards with his personal handwriting imprinted thereupon.

21. When traveling together on at least one work trip, Mr. Ring also insisted on personally buckling Ms. Grove's seatbelt, and did so in a manner that permitted him to stroke her body in a suggestive and untoward manner (though he did not directly touch any private region of her body).

22. Ms. Grove thusly made a report to NRAC's human resources department, which was reluctant to investigate the matter and which, instead, shared her report directly with Mr. Ring.

23. After the initial failure of NRAC to take any action to correct Mr. Ring's illegal behavior, Ms. Grove personally confronted Mr. Ring and insisted he cease the offensive conduct.

24. Following Ms. Grove's confrontation of Mr. Ring, and Mr. Ring's verbal retaliation against Ms. Grove for admonishing his behavior, NRAC's human resources department finally undertook an investigation and suspended both Mr. Ring and Ms. Grove, with pay, pending the outcome of the investigation.

25. Before the investigation could conclude, however, Mr. Ring resigned.

26. When Ms. Grove returned to work following the investigation, she discovered her office had been raided, with personal medications (including one for a urinary tract infection) going missing and work materials being scattered about.

27. At this juncture, NRAC undertook a coordinated and prolonged campaign of retaliation against Ms. Grove, so as to make clear she was no longer wanted in her place of work and, where possible, to make her job retention as difficult as possible.

28. Specifically, and without limitation, NRAC revoked Ms. Grove's color printing privileges even though they were needed for her to carry out work assignments, changed her hours of work, extended her weekend hours of work, required her to come into the office at markedly early hours of the morning, terminated her access to computer programs needed to carry out her job, and had its management repeatedly speak down to her in a rude and demeaning manner.

29. No longer being able to withstand this protracted campaign of retaliatory harassment, Ms. Grove resigned her job in November 2019, with her resignation being in the form of a constructive termination.

30. Following Ms. Grove's constructive termination, NRAC falsified at least one internal record to suggest she had abandoned her job (i.e., simply failed to

6

show up for work) in lieu of resigning, despite her resignation having been shared both in person and via e-mail with NRAC's management.

## Exhaustion of Administrative Remedies

31.    On November 19, 2019, Ms. Grove cross-filed a charge of discrimination with the United States Equal Employment Opportunity Commission (the "EEOC") and the Florida Commission on Human Relations (the "FCHR").

32.    Pursuant to the allowances of Section 1601.13 of Title 29 of the Code of Federal Regulations, the EEOC transferred Ms. Grove's federal charge of discrimination to the FCHR, for consolidated processing, on November 20, 2019.

33.    The FCHR then proceeded to investigate Ms. Grove's charge of discrimination until May 20, 2020, when Ms. Grove asked her charge of discrimination be dismissed so she may pursue civil recourse, with more than 180 days having elapsed since the date of her initial filing.

34.    Consistent with Ms. Grove's written request, on June 1, 2020, the FCHR dismissed Ms. Grove's charge of discrimination pursuant to her "desire to file a civil action in a court of competent jurisdiction," noting that "More than 180 days have elapsed since the charge of discrimination was filed with the Commission."

35.    Consistent with her rights under both Title VII and Florida law, and having exhausted administrative remedies, Ms. Grove now petitions this Honorable Court for redress.

**Count I – Violation of Title VII of the Civil Rights Act of 1964**
**(Discrimination on the Basis of Sex)**

36.    Ms. Grove repeats and realleges each of the foregoing paragraphs of this Complaint as though fully set forth herein.

37.    Mr. Ring and NRAC were each employers of Ms. Grove within the definitional ambit of Section 2000e(b) of Title 42 of the United States Code.

38.    By pressuring Ms. Grove to have an abortion, making sexually suggestive comments to Ms. Grove, physically touching Ms. Grove in a flirtatious and unwelcome manner, and harassing Ms. Grove based on her feminine qualities, the Defendants discriminated against Ms. Grove on the basis of her sex, in contravention of Section 2000e-2(a) of Title 42 of the United States Code.

39.    These actions on the part of the Defendants were willful and malicious in nature.

WHEREFORE, Ms. Grove respectfully prays this Honorable Court (i) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of One Million Dollars and No Cents ($1,000,000.00) as and for their violation of Section 2000e(b) of Title 42 of the United States Code; (ii) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of Three Million

Dollars and No Cents ($3,000,000.00) as and for punitive damages; (iii) award her those reasonable attorneys' fees and litigation costs incurred in connection with this matter and the preceding bringing of her charge of discrimination and reduce the same to a judgment in her favor, and against the Defendants, jointly and severally; and (iv) afford such other and further relief as may be just and proper.

## Count II – Violation of Title VII of the Civil Rights Act of 1964
### (Retaliation)

40. Ms. Grove repeats and realleges each of the foregoing paragraphs of this Complaint as though fully set forth herein.

41. Following Ms. Grove's reporting of Mr. Ring's offending conduct and his resultant resignation, NRAC retaliated against Ms. Grove by, *inter alia*, revoking her color printing privileges even though they were needed for her to carry out work assignments, changing her hours of work, extending her weekend hours of work, requiring her to come into the office at markedly early hours of the morning, terminating her access to computer programs needed to carry out her job, and having its management repeatedly speak down to her in a rude and demeaning manner.

42. This conduct constituted discrimination following Ms. Grove's opposition to the employment practices of NRAC made unlawful by Section 2000e-2(a) of Title 42 of the United States Code.

43. These actions on the part of NRAC were willful and malicious in nature.

9

WHEREFORE, Ms. Grove respectfully prays this Honorable Court (i) enter judgment in her favor, and against NRAC, in the sum of One Million Dollars and No Cents ($1,000,000.00) as and for its violation of Section 2000e-3(a) of Title 42 of the United States Code; (ii) enter judgment in her favor, and against NRAC, in the sum of Three Million Dollars and No Cents ($3,000,000.00) as and for punitive damages; (iii) award her those reasonable attorneys' fees and litigation costs incurred in connection with this matter and the preceding bringing of her charge of discrimination and reduce the same to a judgment in her favor, and against NRAC; and (iv) afford such other and further relief as may be just and proper.

## Count III – Violation of Section 760.10(1) of the Florida Statutes
### (Discrimination on the Basis of Sex)

44.   Ms. Grove repeats and realleges paragraphs 1 through 35 of this Complaint as though fully set forth herein.

45.   Mr. Ring and NRAC were each employers of Ms. Grove within the definitional ambit of Section 760.02(7) of the Florida Statutes.

46.   By making sexually suggestive comments to Ms. Grove, physically touching Ms. Grove in a flirtatious and unwelcome manner, and harassing Ms. Grove based on her feminine qualities, the Defendants discriminated against Ms. Grove on the basis of her sex, in contravention of Section 760.10(1) of the Florida Statutes.

47.     These actions on the part of the Defendants were willful and malicious in nature.

WHEREFORE, Ms. Grove respectfully prays this Honorable Court (i) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of One Million Dollars and No Cents ($1,000,000.00) as and for their violation of Section 760.10(1) of the Florida Statutes; (ii) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of Three Million Dollars and No Cents ($3,000,000.00) as and for punitive damages; (iii) award her those reasonable attorneys' fees and litigation costs incurred in connection with this matter and the preceding bringing of her charge of discrimination and reduce the same to a judgment in her favor, and against the Defendants, jointly and severally; and (iv) afford such other and further relief as may be just and proper.

### Count IV – Violation of Section 760.10(1) of the Florida Statutes
### (Discrimination on the Basis of Pregnancy)

48.     Ms. Grove repeats and realleges paragraphs 1 through 35 of this Complaint as though fully set forth herein.

49.     Mr. Ring and NRAC were each employers of Ms. Grove within the definitional ambit of Section 760.02(7) of the Florida Statutes.

50.     By pressuring Ms. Grove to have an abortion, the Defendants discriminated against Ms. Grove on the basis of her pregnancy, in contravention of Section 760.10(1) of the Florida Statutes.

11

51.     These actions on the part of the Defendants were willful and malicious in nature.

WHEREFORE, Ms. Grove respectfully prays this Honorable Court (i) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of One Million Dollars and No Cents ($1,000,000.00) as and for their violation of Section 760.10(1) of the Florida Statutes; (ii) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of Three Million Dollars and No Cents ($3,000,000.00) as and for punitive damages; (iii) award her those reasonable attorneys' fees and litigation costs incurred in connection with this matter and the preceding bringing of her charge of discrimination and reduce the same to a judgment in her favor, and against the Defendants, jointly and severally; and (iv) afford such other and further relief as may be just and proper.

### Count V – Violation of Section 760.10(7) of the Florida Statutes
### (Retaliation)

52.     Ms. Grove repeats and realleges paragraphs 1 through 35 and 44 through 51 of this Complaint as though fully set forth herein.

53.     Following Ms. Grove's reporting of Mr. Ring's offending conduct and his resultant resignation, NRAC retaliated against Ms. Grove by, *inter alia*, revoking her color printing privileges even though they were needed for her to carry out work assignments, changing her hours of work, extending her weekend hours of work,

requiring her to come into the office at markedly early hours of the morning, terminating her access to computer programs needed to carry out her job, and having its management repeatedly speak down to her in a rude and demeaning manner.

54. This conduct constituted discrimination following Ms. Grove's opposition to the employment practices of NRAC made unlawful by 760.10(1) of the Florida Statutes.

55. These actions on the part of the Defendants were willful and malicious in nature.

WHEREFORE, Ms. Grove respectfully prays this Honorable Court (i) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of One Million Dollars and No Cents ($1,000,000.00) as and for their violation of Section 760.10(7) of the Florida Statutes; (ii) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of Three Million Dollars and No Cents ($3,000,000.00) as and for punitive damages; (iii) award her those reasonable attorneys' fees and litigation costs incurred in connection with this matter and the preceding bringing of her charge of discrimination and reduce the same to a judgment in her favor, and against the Defendants, jointly and severally; and (iv) afford such other and further relief as may be just and proper.

## Count VI – Battery

56.     Ms. Grove repeats and realleges paragraphs 1 through 35 of this Complaint as though fully set forth herein.

57.     Mr. Ring intended to touch Ms. Grove in an offensive manner when he forcibly applied her seatbelt in a manner that permitted him to stroke her body in a suggestive and untoward manner.

58.     Mr. Ring did actually apply Ms. Grove's seatbelt, against her will, in a manner that permitted him to stroke her body in a suggestive and untoward manner.

59.     Mr. Ring was acting within the scope of his employment with NRAC when he committed the aforesaid battery.

WHEREFORE, Ms. Grove respectfully prays this Honorable Court (i) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of One Hundred Thousand Dollars and No Cents ($100,000.00); (ii) enter judgment in her favor, and against the Defendants, jointly and severally, in the sum of Three Hundred Thousand Dollars and No Cents ($300,000.00) as and for punitive damages; and (iii) afford such other and further relief as may be just and proper.

## Count VII – Negligent Supervision

60.     Ms. Grove repeats and realleges paragraphs 1 through 35 of this Complaint as though fully set forth herein.

61.   NRAC had a duty to supervise Mr. Ring's actions as a manger of other employees and to ensure he did not sexually harass his subordinate employees.

62.   NRAC breached this duty by failing to stop Mr. Ring from (i) pressuring Ms. Grove into having an abortion; (ii) sexually harassing Ms. Grove; (iii) physically touching Ms. Grove; and (iv) treating Ms. Grove in a different manner on account of her sex.

63.   This breach has caused Ms. Grove to sustain damages in the form of mental anguish associated with having an abortion and mental anguish associated with the suffering of sexual harassment.

64.   This breach has also caused Ms. Grove to sustain damages in the form of lost wages following her constructive termination for having the temerity to complain of Mr. Ring's actions.

WHEREFORE, Ms. Grove respectfully prays this Honorable Court (i) enter judgment in her favor, and against NRAC, in the sum of Five Hundred Thousand Dollars and No Cents ($500,000.00); and (ii) afford such other and further relief as may be just and proper.

## Count VIII – Libel Per Se

65.   Ms. Grove repeats and realleges paragraphs 1 through 35 of this Complaint as though fully set forth herein.

66. On or about November 22, 2019, NRAC created a "Record of Termination" for Ms. Grove wherein NRAC indicated Ms. Grove's separation from the entity was due to "Job Abandonment."

67. The Record of Termination has alternative check boxes for "No reason Given," "Personal Reasons," and "Dissatisfied with Job," none of which NRAC elected to check, with NRAC instead checking solely the "Job Abandonment" box.

68. Asserting Ms. Grove abandoned her job is objectively and demonstrably counterfactual in nature; even if NRAC does not agree Ms. Grove was constructively terminated through NRAC's campaign of retaliatory harassment, the same does not equate to an abandonment of Ms. Grove's job.

69. By recording Ms. Grove as having abandoned her job, NRAC is asserting Ms. Grove left her job without notice and simply never came back.

70. To the contrary, when Ms. Grove was constructively terminated, she gave both written and oral notice of her resignation being tendered; under no construct may it be said she abandoned her job.

71. The placement of an objectively false statement in one's personnel file is inherently intended to injury one in their business or profession, and such was true in this case as the defamatory statement was made to injure Ms. Grove in connection with her efforts to seek recourse against NRAC.

72.     NRAC caused the subject statement to be published by sending it to the Florida Commission on Human Relations.

73.     While statements made in connection with certain administrative proceeding do enjoy qualified immunity under Florida law, such issue need not be reached *sub judice* as the statement at issue her was objectively false in nature and made with the malicious intent to smear Ms. Grove in an administrative proceeding so as to prevent her from recovering against NRAC and Mr. Ring.

WHEREFORE, Ms. Grove respectfully prays this Honorable Court (i) enter judgment in her favor, and against NRAC, for nominal damages in the sum of One Hundred Dollars and No Cents ($100.00); (ii) enter judgment in her favor, and against NRAC, for punitive damages in the sum of Five Hundred Thousand Dollars and No Cents ($500,000.00); and (iii) afford such other and further relief as may be just and proper.

**[JURY DEMAND AND SIGNATURE ON FOLLOWING PAGE]**

## Jury Demand

Pursuant to, and in accordance with, the allowances of Federal Rule of Civil

Procedure 38, Ms. Grove prays a trial by jury on all matters so triable.

Respectfully submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. 76723
The VerStandig Law Firm, LLC
1452 W. Horizon Ridge Pkwy, #665
Henderson, Nevada 89012
Telephone: 301-444-4600
Facsimile: 301-444-4600
Electronic Mail: mac@mbvesq.com
*Counsel for Ashley Grove*